Ax̲x̲a M. Simonds *vs.* Jonathan B. Simonds.

Suffolk.   March 10. — Oct. 20, 1876.   Ames & Morton, JJ., absent.

A testator, by the third clause of his will, devised an estate to trustees in trust to employ the net income, at their discretion, for the use and benefit of his son G. during his life, and on his death to his children.   On the son's arriving at the age of twenty-one years, he was to be allowed to collect the rents, if capable, the trustees to continue their superintendence.   If the son should die and leave no children, the trustees were directed to pay so much of the income as was necessary for the benefit of the testator's son A. during his life.   By the fourth clause, a second estate was devised to trustees in trust, to apply the income for the benefit of A. during his life, and if the income should be insufficient, the trustees were directed to take, from the income of the other property, a sum sufficient for that purpose, so that not more than one half of the property devised for G. should be appropriated for that purpose.   By the fifth clause of the will, the testator devised an estate on C Street, and another on D Street, to trustees, in trust "to take and receive the rents and income of the same for the use and benefit of my son G. until he arrives at the age of forty years, and on his attaining that age, or should die leaving issue, then to the use of said G. and his heirs, unless said premises should be destroyed by fire; then my will is, that the trustees do sell the land, and place the proceeds in trust, the interest or income thereof to be applied for the use of my sons G. and A. in equal shares, the income of A.'s share to be appropriated by said trustees or his guardian during his natural life."   By the eighth clause, another estate was devised in trust, the income to be appropriated as in the third clause of the will.   The fifteenth clause of the will provided as follows : "In case both my son G. and A. should die without issue, my will is, that all the residue of my real estate hereinbefore limited, appointed and devised, and all my other estate, real and personal, be divided among my nephews and nieces," &c.   A. died without issue.   Afterwards G. died, over forty years of age, intestate and without issue.   No part of the estates, mentioned in the fifth clause of the will, had been destroyed by fire or sold by the trustees.   *Held,* that G. had only a life estate therein.

WRIT OF DOWER, dated March 15, 1875, by the widow of George W. Simonds, alleging that her husband died seised in fee of certain lands, therein described, under the provisions of the will of his father, Jonathan Simonds.   The case was submitted to the Superior Court, and, after judgment for the tenant, to this court, on appeal, on agreed facts in substance as follows :

The will of Jonathan Simonds contained the following provisions :

"Third, my will is, I give and bequeath, direct and appoint unto Franklin Simonds, Jonathan B. Simonds and Jonathan S. Parker, my nephews, and to the survivor and his heirs forever, my mansion house, where I now live, and store on Washington

Street, being number 377; nevertheless to hold in trust for the following intents and purposes, and none other; that is to say, to take and receive the rents and income of the same, and after deducting repairs and paying insurance, the residue to be employed at the discretion of my said trustees, for the use and benefit of my son George W. Simonds, during his natural life, and on his death to his children. But my will is, that after my son arrives at twenty-one years no allowance shall be made to said trustees for their services, if he is capable to take charge of the estate; and I direct that he be thenceforward employed to collect the rents. My will however is, that the said trustees should continue their superintendence and give advice after my son comes of full age, should he survive so long; but should he die and leave no children or descendants of children, I order that the income of the same estate shall be received and taken by my trustees above mentioned, and applied for the benefit of my son Albert Simonds, during his natural life; and the surplus over and above what may be necessary for the support of my said son Albert shall be put out at interest on mortgage, or invested in bank stock of some incorporated bank in Boston, and allowed to accumulate. And if my said son Albert should become capable, in the opinion of said trustees, of transacting business, then I direct the whole of said income to be paid over to him annually during his lifetime.

"Fourth, I give, bequeath, limit and appoint unto Franklin Simonds, Jonathan B. Simonds, and my son George W. Simonds, and their heirs, and to the survivor of them and his heirs forever, the estate at the corner of Warren and Eliot streets, formerly the property of John Trask, deceased; but nevertheless in trust for the following intents and purposes, and none other; that is to say, to take and apply the income of the same for the support of my son Albert Simonds, during his natural life. . . . . And should it so happen that the income of said estate should be unavoidably lost or so far diminished in amount as not to leave enough for the comfortable support and maintenance of my said son Albert, with the other provisions I have herein made for him, then I direct my said trustees to take from time to time out of the income of the other property a sum sufficient for that purpose, so that not more than one half of the property devised

for my son George W. shall be appropriated to make up such deficiency.

" Fifth, I give, bequeath, limit and appoint unto Franklin Simonds, Jonathan B. Simonds and Jonathan S. Parker, and the survivor of them and his heirs forever, my house in Charter Street and another abutting on Goodrich Alley, with the land under and belonging to the same; nevertheless to hold the same in trust for the following intents and purposes, and none other; that is to say, to take and receive the rents and income of the same for the use and benefit of my son George W. Simonds until he arrives at the age of forty years, and on his attaining that age, or should die leaving issue, then to the use of said George W. and his heirs, unless said premises should be destroyed by fire ; then my will is, that the trustees above mentioned do sell the land and make suitable deeds for the conveyance thereof, and place the proceeds in the Massachusetts Hospital Life Insurance Company as a deposit in trust, the interest or income thereof to be applied for the use of my sons George W. and Albert in equal shares, the income of Albert's share to be appropriated by said trustees or his guardian for his use during his natural life. . . . .

" Eighth, I give and devise to the said Franklin and Jonathan B. Simonds and Jonathan S. Parker, and to the survivor of them and the heirs of such survivor, my estate in Chambers Street, formerly Wiltshire Street; in trust, nevertheless, for the following purposes, and none other ; that is to say, I authorize them to make sale thereof, should it be deemed advisable, either by auction or otherwise, for the best price which can be obtained therefor ; and said trustees are to make suitable deed or deeds of conveyance thereof and place the proceeds on interest in a good mortgage with a policy of insurance against fire, or take a mortgage on the same estate upon condition that the said mortgage can lay two years, the interest to be paid annually, and on further condition that the purchaser erect a good store of brick or dwelling-house of brick, and the trustees aforesaid keep the amount of the mortgage insured at his expense, and the income of said premises or the interest of the proceeds thereof to be appropriated as in the third clause of this my will. . . . .

"Fifteenth, I give unto my son George W. Simonds, my nephews Franklin Simonds and Jonathan B. Simonds and to the survivor of them and his heirs, one undivided half of my farm in Lexington; nevertheless to hold in trust, for the following purposes; that is to say, to apply the income of the same to the support of my son Albert, in addition to what I have already given him. . . . . The other undivided half of my farm in Lexington I give to Eli Simonds, son of my brother William Simonds, and to his heirs, on the following conditions : that he carry on the whole farm in a husbandlike manner at the halves ; and, after payment of all taxes, one half of the annual income of the said farm to be paid over to the trustees or guardian of my son Albert for his sole use and benefit; . . . . and in case the said Eli decease before he arrives at the age of twenty-one years, then I do hereby devise that part of the farm intended for the said Eli to Cyrus Simonds, son of my brother William Simonds, and to the heirs of said Cyrus, under the same regulations, restrictions, and upon the same conditions as are pointed out in respect to said Eli, and no part of the income of said farm is to go to either the said Eli Simonds or the said Cyrus Simonds until after he arrives at the age of twenty-one years, or until after the probate of my will and upon his election to take the farm on the conditions aforesaid. In case either said Eli or Cyrus shall refuse to take said farm on the conditions aforesaid, then the same shall be carried on by said trustees for the benefit of my said son Albert, and on his death my will is that all the property that I have devised for his use and benefit shall go to his children, if he shall be restored to his mind and be married and leave issue, otherwise the same shall go to my son George W. Simonds, and in case of his death, to his children and their issue should he leave any. But in case both my son George W. and Albert should die without issue, my will is, that all the residue of my real estate hereinbefore limited, appointed, and devised, and all my other estate, real and personal, be divided among my nephews and nieces as follows : to wit, the children of my brother Joshua, my brother William, my sister Martha Merriam, and my sister Elizabeth Parker, during their natural lives, and after their decease to be equally divided among their children or their legal representatives."

George W. Simonds died over forty years of age, intestate, without issue, never having sold the land described in the writ, which was the same devised by the fifth clause of the will of his father. No part of the land had been sold by the trustees under the will, and no building upon it had been destroyed by fire. George W. survived his brother Albert, named in the will, who died intestate and without issue. A demand in due form has been made upon the tenant.

*H. G. Parker*, for the demandant.

*J. O. Teele*, for the tenant.

Devens, J. It was decided in *Simonds* v. *Simonds*, 112 Mass. 157, that the trust in reference to the Charter Street estate terminated upon the arrival of George W. Simonds at the age of forty years, but it was not there held, as contended by the demandant, that George W. died .seised in fee of the premises of which the demandant now claims one half in lieu of dower. That was a bill in equity brought by trustees under the will of Jonathan B. Simonds for instructions, and it was sufficient for that case to determine that, at the arrival of George W. at the age of forty, the trust ceased as to this estate, and that he was entitled to enjoy the estate devised to him discharged therefrom, and that no instructions were necessary in relation thereto. It was not important to decide what was the character of the estate devised. It was there said that the general scheme and purpose of the testator apparent from the will was to divide the bulk of his estate into two parts : to give the use and income of one part to each of his sons during his life, and at his death to give such part to his issue, should he leave any ; but if both sons should die without issue, then to give the whole estate to the nephews and nieces named in the residuary clause, for their lives, and upon their death to their children or legal representatives. As we are satisfied, on reëxamining this complicated will, that we were not in error as to its general purpose, the fifth clause, containing the devise of the Charter Street and Goodrich Alley estates, is to be considered in connection with that purpose, as shown by the clause itself and the other clauses of the will, in order that the intent of the testator may be carried out, if it can be ascertained from the will, and if it be possible to do so.

The fifteenth clause provides that, in case his sons George W. and Albert should die without issue, all the residue of his real estate " before limited, appointed and devised," and all his " other estate, real and personal," should be divided among certain nephews and nieces. While no mention is made of these estates, the testator contemplates that he has not finally disposed of his real estate, and that, of that which has been before limited, appointed and devised, there is or may be yet a residue to be disposed of. This he proceeds to do by the limitation over to the nephews and nieces, which of course would be defeated, so far as these estates are concerned, if George, by living to the age of forty years, had obtained a fee simple in them.

The portion of the fifth clause by which these estates are devised to trustees " to take and receive the rents and income of the same for the use and benefit of my son George W. Simonds until he arrives at the age of forty years, and on his attaining that age, or should die leaving issue, then to the use of said George W. and his heirs, unless the same should be destroyed by fire," is followed by a provision, in that contingency, for the sale of the property, and such an investment of the proceeds as shall enable the two sons, George W. and Albert, to receive the income for their lives. It is further provided that the Goodrich Alley estate may be disposed of, at the discretion of the trustees, after George W. arrives at the age of· twenty-one years, the proceeds to be invested as provided in case of a sale of the property after destruction of the buildings. These portions of the clause are not consistent with the idea that it was intended to give to George W. an estate in fee simple in these two parcels upon his arriving at the age of forty years, while in the other parcels he took only an estate for life. They show that the testator adheres, in regard to these estates, to the idea that, in case of the death without issue of his two sons, all that they are to have is an estate for life, and that there will be a residue to be devised. Had these two parcels been sold, in accordance with the provisions enabling the trustees so to do, the limitations over upon the death of the two sons would have taken effect, as all that they were entitled to receive, when the estates were reduced to money, was the income for their lives. Nor is it readily conceivable that the testator should have designed that an estate,

which he intended should become an estate in fee if George lived to the age of forty, should, if the buildings were destroyed by fire, be exchanged for a right to the income only of the proceeds thereof, in common with his brother, for their lives, nor that, as to the Goodrich Alley portion of the estate, it might be so exchanged simply at the discretion of the trustees.

It is also to be observed that, if these estates became estates in fee simple on the arrival of George at the age of forty years, this is at variance with the general purpose of the testator to provide for the issue of his sons, if they should die leaving issue.

The words by which this property is devised to trustees, "until he" (George) "arrives at the age of forty years, and on his attaining that age, or should die leaving issue, then to the use of said George and his heirs," might, if they stood alone, be construed as giving an estate in fee to George upon his arrival at the age of forty years. They are, however, not easily susceptible of literal construction, as, if the words "to the use of said George and his heirs" be applied to the devise upon the occurrence of each of the contingencies, it would be a devise to the use of George in the event of his death, leaving issue. If they are construed distributively, with reference to the two contingencies upon which the estate is limited, they are intelligible and accord with the general purpose of the will. Keeping in mind the provisions of the fifteenth clause of the will, and also the intent of the testator, clearly manifested, to provide for the issue of his sons, the construction of the clause is, that if George arrives at the age of forty, the estate is to be to his use for life, and if he dies at any time leaving issue, then to the use of his heirs, who would of course be the issue before referred to.

The third clause, by which the mansion house of the testator and his store on Washington Street are devised, indicates that while, for the protection of his insane son Albert, he thought it necessary to place in the hands of trustees that property the use of which he devised to George, he also had confidence in the ability of George to manage it. In reference to that estate, while in form the trust was to continue, the actual management was to be by George, after he should arrive at the age of twenty-one years. In reference to this, the intent was that if George

should arrive at the age of forty years, the trust should termi-nate, and the estate become that of George for life.

As, under our construction, this was all that George took, there must be                                          *Judgment for the tenant.*