GEORGE W. PHELPS & another, executors, *vs.* HENRY W. PHELPS & others.

Hampden. Sept. 28, 1886. — Feb. 24, 1887. DEVENS & W. ALLEN, JJ., absent.

A testator by his will, after making several bequests, some of them payable when the legatees should arrive at a certain age, and providing that a grandson should, if he wished to have a college education, receive a certain sum annually, to be paid by the executors, while in college, gave one half of the income of the remainder of his property, both real and personal, to his son H. for the support of himself and family, at his decease to be disposed of to his legal heirs, as he should desire or direct by will or otherwise; and gave the income of the other half of the remainder, both real and personal, to his son J., for the support of himself and J.'s son W., the support of the son to be as the father should direct. At the decease of J., one half of this half was to be disposed of to J.'s heirs, as he should direct, and the other half to W., if, at the death of J., the executors should judge W. to be a person of good habits and capable of managing the property; otherwise, to the legal heirs of the testator. The will also gave to the executors authority to sell real estate, and invest the proceeds; and appointed executors, but did not appoint trustees. *Held*, on a bill in equity by the executors for instructions, that the real and personal estate vested in the executors on the following trusts: 1st. To pay the legacies as they should become due, with interest only from the time when due. 2d. To pay one half of the income of the general fund, after payment of legacies as they should become due, to H., for life, in trust for the support of himself and family, and to pay the other half of the income to J., for life, in trust for the support of himself and W., and, at the decease of H. and J. respectively, to dispose of the remainder in accordance with the will. *Held, also*, that H. had power to dispose of one half of the remainder of the estate, and not merely of the income, to take effect at his death.

Upon a bill in equity by a trustee for instructions as to the construction of a will, the court will not specifically determine whether the interest of a *cestui que trust* in income is such that it can be attached by his creditors, who are not parties to the suit.

BILL IN EQUITY, by two of the executors of the will of Willis Phelps, against the third executor and other persons having an interest under said will, asking the instructions of the court as to the construction of the will. The case was heard by *W. Allen*, J., on the bill and answers, and reserved for the consideration of the full court, and was as follows:

Willis Phelps died on November 25, 1883, leaving a will, dated October 27, 1881, which has been duly admitted to probate, and contains the following clauses:

" I give and dispose of my property as follows, viz.:

" To Willis Phelps, son of John Wesley Phelps, three thousand dollars, to be paid to him when he shall arrive at the age of twenty-two years, provided the executors of this will, or a majority of them, shall think him at that age capable of managing the same prudently, and with economy ; if not, he is to receive the income of the same annually, after he shall be twenty-two years of age.

" To Henry Willis Phelps, Jr., my grandson, I give three thousand dollars, or the income of the same, on same terms as above named for Willis, my grandson.

" To Mariah Bartlett Phelps, three thousand dollars.

" To Mary Isabella Phelps, to Lucy Phelps, to Annie Warner Phelps, all children of my son Henry Willis Phelps, I give two thousand dollars each, to be paid to them when they shall arrive at the age of twenty-five years (25), or if any of them should be married before they arrive at that age they are to receive the same when married.

" Provided, my grandsons Henry Willis Phelps, Jr., or Willis Phelps (one or both) shall wish to have a college education, they shall receive six hundred dollars each, annually, for their support, to be paid by my executors at such times as they shall think advisable, as long as they shall remain in college, not exceeding four years each.

" To Mariah Smullen and Mary Mack (who have been in the family many years), one hundred dollars each.

" After deducting the above donations, gifts, and provisions, one half of the income of the remainder of my property (both real and personal) I give to my son Henry Willis Phelps, for the support of himself and family, — at his decease to be disposed of to his legal heirs as he shall desire or direct (by will or otherways).

" The income of the other half of my estate, both real and personal, after deducting, as provided above, is to be given to my son John Wesley Phelps, for the support of himself and son Willis Phelps, 2d. (The support of the son shall be as the father shall elect.) One half of this half of my estate is to be disposed of at the decease of my son John Wesley, to his heirs, as he shall direct, provided no part of the same shall be given to her who is or has been known as Fanny Their.

"The other half of the same, which my son, John W., is to receive the income from, shall go to my grandson, Willis Phelps, 2d, provided the said executors, or a majority of them, at the decease of my son, John W., shall judge said grandson to be a person of good habits and capable of managing the property with skill and prudently; if not, it is to go to my legal heirs.

"Authority is given to my executors to sell and dispose of any and all of my real estate in the State of Massachusetts, and to invest the proceeds.

"All debts due me from either of my sons at my decease, which were contracted previous to January 1st, eighteen hundred and eighty-one, shall be cancelled (1881), provided they shall cancel all debts from them against my estate previous to that date.

"I hereby appoint my son Henry W. Phelps, George W. Phelps, and Charles Marsh of this city, as executors of this will, without bonds."

Two years have elapsed since the plaintiffs gave bond for the performance of their duties as executors, and due notice was given of the appointment of the plaintiffs and the defendant Henry W. Phelps as executors of the will, and all claims against said estate have been paid, and there is remaining a large amount of personal and real estate, situated in this State, to which the provisions of the will are applicable.

The bill set forth the contentions of the different defendants, which sufficiently appear in the opinion, except one contention of John W. Phelps, which was that his interest could not be attached on trustee process. The plaintiffs asked for instructions on the following points:

1. The relation of the executors to the real estate of the testator, whether they are vested with the legal title in fee, and, if so vested, then subject to what trusts as to Henry Willis Phelps, John Wesley Phelps, Willis Phelps, 2d, and the family and heirs of Henry Willis Phelps, and the heirs of John Wesley Phelps.

2. As to the personal estate of the testator, whether they are to hold the same upon trust, and, if so, for what length of time and subject to what trusts as to the persons last above named, or are to pay the same into the hands of the residuary legatees.

3. As to the legacies to Willis Phelps, 2d, Henry Willis Phelps, Jr., Mary Isabella Phelps, and Annie Warner Phelps, whether the fund to meet said legacies shall be invested and the current earnings thereof paid to the residuary legatees until the principal of the said legacies become payable, or whether the accumulated earnings of a fund invested to meet said legacies shall be reserved and paid to the legatees, together with the principal of said legacies, at the time when the legacies themselves become payable, and whether the investments to meet said legacies shall be made separately, so that each legacy shall bear, separate and apart from the others, the risk of loss thereon, or whether the legacies ought to be invested together as a general fund, out of which the legacies shall be paid as they respectively become due.

*W. W. McClench,* for Henry W. Phelps.

*G. M. Stearns,* for John W. Phelps.

*C. L. Long,* for the grandchildren of the testator.

GARDNER, J. Although the testator appointed no trustees, it is clear that, by fair implication from the terms of the will, the property is to be kept together for a time. The executors therefore became trustees of both the real and personal estate during the time it was necessary for them under the terms of the will to act in that capacity. The real and personal estate would vest in the executors upon the same trusts. *Kingsbury* v. *Gould,* 9 Met. 282.

The defendant Henry W. Phelps, while admitting that the executors became trustees of the real and personal estate for a certain period, contends that, upon the termination of the general trusts by the payment of the legacies, or the refusal to pay them, he is by the terms of the will vested with the legal title in fee simple to an undivided one half part of all the real estate of the testator, and to an absolute interest in one half of the personal estate.

It is not clear by the power of disposal in the latter part of the clause relating to Henry W., whether it is income or principal which the testator refers to. But comparing this power with that given to John in the clause, "one half of this half of my estate is to be disposed of at the decease of my son John," we think that the true meaning of the testator was to give his

son Henry W. Phelps at his decease power to dispose, by will or otherwise, of one half of the remainder of the testator's estate. The presumption is, that the testator did not intend to leave any part of his estate undisposed of.   *Weston* v. *Weston,* 125 Mass. 268.   His intention to dispose of all his property is apparent from the language of the will, by the words which he has used. If he has omitted to express his intention, this omission cannot be supplied by conjecture.   " But if a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court must supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared." *Metcalf* v. *Framingham Parish,* 128 Mass. 370, 374.

The bequest to Henry of the income of one half of the remainder is coupled with a trust for the support of his family. To give property to one person for the support of another, is sufficient to show that a trust is intended in favor of the latter. *Loring* v. *Loring,* 100 Mass. 340.   *Andrews* v. *Cape Ann Bank,* 3 Allen, 313. ' *Whiting* v. *Whiting,* 4 Gray, 236.   The word " family " includes the sons and daughters, so long as they may live together and form a portion of the same household.   *Bradlee* v. *Andrews,* 137 Mass. 50.   The purpose of this bequest of the income is " for the support of himself and family."   He has a life interest in the income, coupled with a trust for the support of his family.   He has no absolute estate in the half remainder. Nor is the bequest of the income clothed with a trust in favor of his children, or of " his legal heirs."   At his decease the estate is to be disposed of to his legal heirs as he may wish, by will or otherwise.   The disposition of the estate is limited to his legal heirs.   But this power to dispose of the estate cannot be exercised until his decease.

The provision made for John is in many respects similar to that made for Henry.   It is apparent that the testator intended that the executors should hold the property up to the time of John's death, and that then they should determine what disposition should be made of the one half which in a certain event they were to deliver over to Willis 2d.   This was a question for

them to determine, and, to enable them effectually to carry out the intention of the testator, it was necessary that they should have the control and possession of the property. The income of one half "is to be given" to John W., for the support of himself and his son Willis 2d. The income which goes into John's hands is charged with a trust, for the benefit of his son, in the same way, and to the same extent, that the income given to Henry is charged with a trust to support his family. In neither case is the income of the estate received by the sons, to be held absolutely by them to be disbursed at their pleasure. They each take the income of one half of the estate in trust, so that the family, the wife and children of one, and the son of the other, can enforce its due appropriation in part for their benefit, in a court of equity. Otherwise, it would be in the power of either son to defeat the purpose of the testator, by depriving the family of the one, and the son of the other, of the support which is expressly provided for by the will. *Chase* v. *Chase*, 2 Allen, 101. *Proctor* v. *Proctor*, 141 Mass. 165. *Andrews* v. *Cape Ann Bank*, *ubi supra*.

Inasmuch as the income when received by Henry and John is charged with a certain trust for the support of the family of Henry and for the support of the son of John, their respective interests are only equitable. To give them the principal might defeat the intention of the testator in his provision for their respective heirs, to whom the principal sum is to go at their decease. *Saunderson* v. *Stearns*, 6 Mass. 37. *Field* v. *Hitchcock*, 17 Pick. 182. *Barrus* v. *Kirkland*, 8 Gray, 512. *Hatfield* v. *Sohier*, 114 Mass. 48. *Simonds* v. *Simonds*, 121 Mass. 191. *Smith* v. *Snow*, 123 Mass. 323. *Sanford* v. *Sanford*, 135 Mass. 314.

An examination of the provisions of the will shows the purpose and intention of the testator. The provision that the grandsons shall have a college education if they desire, and that the executors at such times as they shall think advisable shall pay them six hundred dollars each annually for four years, if they remain in college so long, indicates that the executors should hold the remainder of the estate in trust. The amount required by the executors for this purpose is uncertain, and will depend upon the determination of the grandsons. Power is

given the executors to sell and dispose of all the testator's estate in this State, and to invest the proceeds. They are not limited as to time in making such sale and investment, and it appears to have been the intention of the testator that they were to have such power as occasion might require in carrying out the purposes of the testator, and that for these purposes the executors should hold the real estate in trust. The clause in the will, that the support of the son of John should be as the father shall elect, indicates that the funds to supply that support should come from the executors; that, although they should supply the funds, they should not dictate the manner of support which the father should furnish the son. There are other indications in the will pointing to the same conclusion. The duty of the court, in giving a construction to the will, is to ascertain the real intent and meaning of the testator. *Cook* v. *Holmes*, 11 Mass. 528. *Metcalf* v. *Framingham Parish, ubi supra.* From reading the whole will and examining its provisions, we are led to the conclusion, that it was the intention of the testator that the executors should be vested with the title to the real estate, and should hold the personal property on the following trusts:

1st. To invest the personal property of the testator as a general fund, and hold the same with the real estate, out of which the legacies, donations, gifts, and provisions shall be paid as they severally become due and payable.

2d. To pay one half of the income of the general fund and of the real estate remaining after the payment of the legacies, donations, gifts, and provisions, as they severally become due and payable, to Henry W. Phelps, during his life, for the support of himself and family, and to pay the other half of said income to John W. Phelps, during his life, for the support of himself and his son Willis Phelps, 2d, and, at the decease of Henry W. Phelps and John W. Phelps respectively, to dispose of the remainder of the estate in accordance with the provisions of the will.

By the terms of the will, the "donations, gifts, and provisions" are not to be deducted and set apart as a separate fund, but are to be deducted as they become due and payable. They remain, subject to payment, a part of the general fund, the income of which is to be paid, one half to Henry W. Phelps, and one half to John W. Phelps. When any of the legacies are paid, the

amount of the general fund is reduced, to the extent of payment, and the amount of the income is also diminished.

The legacies cannot earn interest which will enure to the benefit of the legatees, before the time specified in the will for the payment of the legacies, or of their income. The testator has provided that, under certain conditions, the income of the legacies of three thousand dollars to his grandsons Willis Phelps and Henry W. Phelps, Jr., shall be paid to them annually after they "shall be twenty-two years of age." He has also provided that the legacies to his granddaughters shall be paid to them when they arrive at a certain age, "or if any of them should be married before they arrive at that age they are to receive the same when married." It was apparently the intention of the testator that income should not be added to the legacies and gifts until they were due and payable. The general rule of law, that legacies payable at a certain time do not bear interest until that time arrives, governs in this case. *Merritt* v. *Richardson*, 14 Allen, 239. *Kent* v. *Dunham*, 106 Mass. 586.

Upon a bill of this character, where the executors ask for the construction of the will, an attaching creditor is not a necessary party. In this suit in equity we cannot determine the rights of creditors of John W. Phelps to any part of the income payable to him by the terms of the will. *Decree accordingly.*