[No. 2194]

In the Matter of the Estate of OTTO HARTUNG, Deceased.

[155 Pac. 353]

1. Wills—Construction—Intention of Testator.
    The cardinal rule in the interpretation of wills is to ascertain the intention of the testator.
2. Wills—Construction of Devise—Income of Estate.
    Under a will devising the residue of an estate to the Independent Order of Odd Fellows, the income therefrom to be paid over by the executors and trustees annually, if within five years from testator's death the order established a home for orphans in a certain place, to be known by a certain name, with devises of the estate over in the contingency that the order should not accept such condition, it was the testator's intention that the order, if it established such a home within such time, should receive only the income of the estate.
3. Wills—Construction—Trust—Income.
    Under such will, in which the devise was unlimited as to time, the rule that a gift of the income of a fund without limit as to time will pass the fund itself did not apply, as it was the testator's intention, in case the order did not build the home, to create an active trust, the trustees to manage the *corpus* of the trust fund and pay over the proceeds thereof annually to the order as long as it maintained the home.

4. WILLS — CONSTRUCTION —"RESIDUE"—"RESIDUARY LEGATEE" — "RESIDUARY BEQUEST."

Under such will, the order was not a "residuary legatee," . as the term "residuary bequest" means that the residue of an estate is bequeathed to a person absolutely, and as there can be but one "residue" of an estate, meaning what is left after the payment of the debts and general legacies and the satisfaction of other specific gifts.

5. WILLS—RESIDUARY BEQUEST—INCOME.

A residuary bequest contingent in terms generally carries the intermediate income, which is not disposed of, but accumulates.

6. APPEAL AND ERROR—PRESUMPTION—RECORD.

Where the executors of an estate had made two reports before their final report, each of which was proved and settled by the court, and there was no evidence in the record that the estate could have been settled sooner with advantage, the court would not presume such to have been the fact.

## COSTS AND ATTORNEYS' FEES

1. COSTS—PROCEDURE FOR RETAXING IN SUPREME COURT.

Under rule 6, paragraph 3, Rules of Supreme Court, objections to cost bill must be filed with the clerk of the court and heard and settled by such clerk. From the ruling of the clerk an appeal may be taken to the court. The court will not consider objections to a cost bill except upon appeal from the decision of the clerk.

2. ATTORNEYS' FEES.

No question of attorneys' fees being presented by the record, the matter of an allowance for such fees to counsel for appellant is entirely within the province of the trial court.

APPEAL from Second Judicial District Court, Washoe County; *John S. Orr* and *R. C. Stoddard*, Judges.

In the Matter of the Estate of Otto Hartung, Deceased. From a decree of distribution of the estate and from an order overruling a motion to modify such decree, the Grand Lodge of the Independent Order of Odd Fellows of the State of Nevada appeals. Order and decree **affirmed.**

*Thomas E. Kepner* and *C. E. Mack*, for Appellant:

The bequest of the income of this estate, unlimited as to time, was, in the intention of the testator, as well as in its legal effect, an absolute and unqualified bequest of the entire *corpus* or residue to appellant. (*Smith* v. *Gates*, 2

Root, 532, 1 Am. Dec. 89; *Garrett* v. *Rex*, 6 Watts, 14, 31 Am. Dec. 447; *Manning* v. *Craig*, 3 Green Ch. 436, 41 Am. Dec. 739; *Craft* v. *Snook's Executors*, 2 Beas. Ch. 121; 40 Cyc. 1550; *Busby* v. *Busby*, 137 Iowa, 57, 114 N. W. 559; *Wellford* v. *Snyder*, 137 U. S. 521; Schouler on Wills and Administration, 507; 2 Redfield on Wills, 329; *Snyder* v. *Baker*, 5 Mackey, 443; *Chase* v. *Chase*, 132 Mass. 473; *Angell* v. *Springfield Home*, 157 Mass. 241; *Hussey* v. *Sargent*, 116 Ky. 52, 75 S. W. 211; *Baldwin* v. *Tucker*, 61 N. J. Eq. 412, 64 N. J. Eq. 333, 48 Atl. 544; *Zimmer* v. *Sennett*, 134 Ill. 505; *Hyde* v. *Rainey*, 233 Pa. St. 540; *Thompson's Estate*, 234 Pa. St. 82; *Rogers's Estate*, 245 Pa. 206.)

Appellant is entitled to use the intermediate income accruing between the death of the testator and the date when the home was established and the income accruing annually thereafter for the purpose of maintaining the home. "A general residuary bequest, contingent in terms, carries the intermediate income, which is not undisposed of, but accumulates." (40 Cyc. 1569; *State* v. *Stiney*, 78 Conn. 397, 62 Atl. 621; *Hartford* v. *Haines*, 67 Md. 240, 9 Atl. 540; *Saibert* v. *Miller*, 55 N. Y. Supp. 593; *Drayton* v. *Rose*, 7 Rich. Eq. 329, 64 Am. Dec. 731; *Leissenring's Estate*, 85 Atl. 80; Jarman on Wills, 6th ed. 1046; Hawkins on Wills, 57.)

The conditions imposed by the testator were accepted by the grand lodge. A binding and enforcible obligation was then created. (*Maxey* v. *City of Oshkosh*, 128 N. W. 899.) The equitable title to the residuary *corpus* and income of the estate vested in appellant at the death of the testator, and on accepting the bequest on the terms stated appellant became entitled to the legal title thereto. (*Jones* v. *Habersham*, 107 U. S. 174; *Appeal of Beardsley*, 77 Conn. 705, 56 Atl. 664; *Crerar* v. *Williams*, 145 Ill. 549, 34 N. E. 471; *In Re Roche*, 104 N. Y. Supp. 601; *Maxey* v. *City of Oshkosh*, 128 N. W. 899.)

The account filed by the executors on October 14, 1914, and approved November 9, 1914, was a final account within the meaning of section 6072, Revised Laws, and the trial court should have so held and decreed distribution of the estate on the petition of the appellant. (Rev.

Laws, 6060, 6061, 6072; *Estate of Sheid,* 129 Cal. 172; *Clark v. Sandroch,* 77 Atl. 377; *Thomas* v. *Lambie's Estate,* 70 N. W. 442; *Vaughn* v. *Hines,* 87 N. C. 455; *Roach's Estate,* 92 Pac. 121; Church's Probate Laws, 1200.)

*Cheney, Downer, Price & Hawkins,* for Respondents:

Even if appellant has complied with the conditions of paragraph 10 of the will, in no event is it entitled to receive more than the income of the estate, to be paid to it annually by the executors and trustees named in the will. The intention of the testator, as declared by the will itself, must prevail. If a general purpose and intention conflicts with a particular, the former prevails. (Page on Wills, secs. 461–463.)

Where the will imposes an active duty upon a trustee, and devises the income only, the trustee is entitled to the possession of the property from which the income is derived. (*Mackay* v. *Mackay,* 40 Pac. 558; *Appeal of Holt,* 19 Atl. 588; *Winn* v. *Bartlett,* 45 N. E. 752; *Appeal of Eichelberger,* 19 Atl. 1006; *Phelps* v. *Phelps,* 10 N. E. 445.)

The bequest to appellant is upon a condition precedent. Courts have no artificial rules of construction which require them to declare a gift absolute and vested, if it appears from the language of the will that the testator intended it should be contingent. (*Phayer* v. *Kennedy,* 48 N. E. 828; *Bennett* v. *Bennett,* 75 N. E. 339; *Robinson* v. *Martin,* 93 N. E. 489; Page on Wills, 772; 18 Am. & Eng. Ency. Law, 2d ed. 732; *Finlay* v. *King,* 3 Pet. 374; *Markham* v. *Hufford,* 82 N. W. 222; *In Re Paulson's Will,* 107 N. W. 484; 1 Kent Com. 202; 4 Words and Phrases, 1157; *In Re McClellan's Estate,* 70 Atl. 737; 2 Jarmin on Wills, 1111, 1220.)

By the Court, COLEMAN, J.:

This is an appeal by the Grand Lodge of the Independent Order of Odd Fellows of the State of Nevada from the decree of distribution made in the above-entitled estate, and from an order overruling a motion to modify said decree.

The controversy grows out of the construction of the

will of Otto Hartung, deceased. Those portions of the will which are essential to an intelligible understanding of the questions involved read as follows:

"Eighth—In place of the provisions contained in paragraph 6, I give and bequeath to my sister Amalia Genkell of 14a Langenstrasse, Ilversgehoven, Germany, the sum of one hundred ($100.00) dollars, and in addition thereto the sum of twenty-five ($25.00) dollars monthly dating from my death during the remainder of her natural life, and I direct that the said monthly payment of twenty-five ($25.00) dollars be transmitted to her by my executors, and after their discharge by the trustees hereinafter named, and without deduction for cost of exchange and transmittal. * * * "

"Tenth—I give, devise, and bequeath all the residue of my estate, both real and personal, as follows:

"(A) To the Independent Order of Odd Fellows of the State of Nevada the income from my estate to be paid over to them by my executors and trustees annually, if within five years from the date of my death the said Independent Order of Odd Fellows of the State of Nevada, does establish a home worthy of its name, for orphans and foundlings near Reno, Nevada, and to be known by the name of the 'Royal D. Hartung Home for Orphans and Foundlings' but if the Independent Order of Odd Fellows of Nevada does not accept the provision of this bequest, within the time herein mentioned, then—

"(B) I give and bequeath all my estate to the board of school trustees of Reno, Nevada, provided that they will build and establish within the Reno school district an industrial school, the land and building to cost not less than twenty-five thousand ($25,000.00) dollars. The cost of this land and the building shall be paid by the taxpayers of the Reno school district. The said school shall be known as the 'Royal D. Hartung Industrial School,' and my estate shall be excepting where already invested in safe, and good income-bearing bonds, reduced to cash and loaned out upon first-class real estate security, the income thereof to be considered as an annual

endowment fund and the income thereof only to be expended annually by the Board of Trustees for the purpose of paying the teachers, or supplying facilities for instruction in the Royal D. Hartung Industrial School. If, after a reasonable time has elapsed not exceeding seven years after the date of my death, the city of Reno fails to accept the provisions of this bequest, then—

"(C) I give and bequeath all my estate, both real and personal not otherwise herein devised, to the board of regents of the State University of Nevada, that my estate be reduced by them to cash, or good income-bearing securities, and loaned out upon first-class real estate security and the income thereof alone to be expended annually, or at such other period as such trustees may deem best in assisting poor, worthy students, of high moral character, in obtaining an industrial school or industrial college education in the city of Reno, and I expressly direct that the principal of said gift to said board of regents be kept intact and that the fund be kept a perpetual fund to be known as the 'Royal D. Hartung Industrial Education Fund'; and I further authorize a majority of the members of said board of regents to act with respect to the disposal of said income, or in any matter respecting said fund or the income thereof, said regents to be and act as trustees of said fund without pay.

"Eleventh—I nominate, constitute, and appoint C. T. Bender, now cashier of Washoe County Bank of Reno, Nevada, J. E. Stubbs, president of the State University of Nevada, and Edward Barber, grocer of Reno, Nevada, the executors of this my last will and testament; a majority of whom may act in the execution of the provisions of this will; and I do hereby authorize and direct that in the event of the death of any of the said executors the surviving executor or executors may act in the execution of this will as fully and legally as could the three hereby appointed. And that the said executors shall act as trustees without pay excepting as hereinbefore provided, and that the survivors shall have the

power of appointing the successors of any one of such executors or trustees, in case of death, or refusal or inability to act, subject to the approval of the judge of the district court at Reno."

The lower court found:

That appellant had established a home in accordance with the terms of paragraph 10 of the will of the deceased, and ordered that all expenses of closing the estate be paid. "(4) That said estate is in a condition to be closed and the property set over and distributed to the trustees under said will. * * *" That the executor of the estate "pay to the trustees of the Grand Lodge of the Independent Order of Odd Fellows the income of said estate since the 20th day of September, 1914, to wit, the sum of $1,112.45, to be used by said trustees of said grand lodge for the maintenance and support of said Royal D. Hartung Home for Orphans and Foundlings," the date mentioned being that upon which the home was dedicated. "(5) That Edward Barber, as sole executor of said estate, deliver to said trustees (named in the will), * * * and that the rest and residue of said estate, * * * together with any income received since filing said final account, be and the same hereby is set over and distributed to * * * trustees, and their successors in trust, for the uses and purposes set forth in the tenth paragraph of said will, subject to the claim of Amalia Henkel to a monthly allowance to be paid therefrom by said trustees since November 2, 1914, and as long as said Amalia Henkel shall live. * * *

"It is further ordered that at least ten days prior to the 1st day of August of each year hereafter, and until the further order of this court, the trustees of said estate present to this court their account and report showing the income of said trust estate since the 1st day of August of the preceding year, together with the necessary expenses of the administration of said estate, and that said trustees of said estate, on or before the 1st day of August next following the filing of said

report, or at such times as the court may order, pay the net income of said trust estate for the preceding year as found by said court, to the trustees of the Grand Lodge of the Independent Order of Odd Fellows of the State of Nevada, for the purpose of maintaining said Royal D. Hartung Home for Orphans and Foundlings."

While several errors are assigned, we think we need consider only two of them, viz, first and second, which read as follows:

"First—The court erred in not deciding and decreeing distribution of all the principal, residue, or *corpus* of said estate to appellant to be held by it intact and the income arising therefrom from the death of the testator, January 21, 1910, and the establishment of the Royal D. Hartung Home for Orphans and Foundlings, to be used by appellant for the support and maintenance of said home.

"Second—The court erred in deciding that it was the intention of said testator expressed in his said last will and testament to separate the principal, residue, or *corpus* of said estate from the income arising therefrom and accruing thereon, and in decreeing distribution of such residue, together with income accruing between the death of the testator and the 20th September, 1914, to Edward Barber, C. R. Carter, and Theodore Clark."

1, 2. Bearing in mind that the cardinal rule of interpretation of wills is to ascertain the intention of the testator (40 Cyc. 1386), we will consider the point urged under the first assignment of error; that is, was it the intention of testator, in case appellant complied with the terms imposed upon it, that the residue of his estate should be turned over to appellant by the executor, or was it his intention, as claimed by the executor, that the residue of the estate should be distributed to the trustees, on condition that they pay over the income to appellant?

It is apparent at a glance that the paramount purpose of the testator was the establishment and maintenance of a permanent monument to the memory of his

son. So consumed was he with this idea and purpose, that he proposed three conditions in his will as an assurance that his wishes in this regard would be carried out. The medium through which he most desired the attainment of his aim was the Independent Order of Odd Fellows, for it was to that organization he offered the first inducement, as appears from paragraph 10 of his will. Should the organization named fail to avail itself of the opportunity offered, then the Reno school district or the State University, in turn, was to take the residue of the estate of the testator. Whichever of the organizations named should elect to benefit by the generosity of the testator must assume the burden going with it. Every advantage has its burden; for every pleasure we must pay the price. Testator named the advantage, and the burden which was to accompany it. Before appellant could acquire the benefits which might flow to it from the estate of the testator, it had to assume the burden, which it elected to do, and did do by establishing shortly before the expiration of the five-year period a home such as contemplated by the will of the testator.

To our mind, it is made clear by the will that it was the intention of the testator that, in case of appellant's electing to comply with the terms of paragraph 10 thereof, it should receive only the income of the estate, and not the *corpus* thereof. This is clear, for the reason that by paragraph 10 of the will testator provides that "the income from my estate to be paid over to them (I. O. O. F.) by my executors and trustees annually," while it is provided that the *corpus* of the estate should go to the Reno school district, or, in case of its failure to accept the bequest upon the terms mentioned, then to the board of regents of the State University. Surely great significance should be attached to the use of the word "income" in one instance, while in two others words implying an entirely different meaning are used. It shows that a different purpose was sought to be expressed.

3. It is the contention of appellant that the bequest to it is unlimited as to time, and that therefore it was an absolute and unqualified gift of the residue of the estate to appellant. Roper on Legacies (Ed. 1848) vol. 2, at page 1477, says on this point:

"But notwithstanding as a general rule the gift of interest and dividends standing by itself is a gift of the *corpus,* yet if from the nature of the subject, or the context of the will, it appear that the produce or interest of the fund was only intended for the legatee, the gift of the interest will not pass the principal."

The learned author then proceeds to review a number of English authorities sustaining his statement.

Cyc. lays down the rule as follows:

"A gift of the interest, income, or produce of a fund without limit, as to time, will pass the fund itself. And where a beneficiary is given an unrestricted interest in the income of a fund during his life, he may, in the absence of a statute, alienate it, either wholly or in part, before the time fixed for payment. If, however, it is the manifest intent of a testator to sever the product from its source, as where only a life estate in the income is given, a bequest of income will not carry an absolute estate in the principal." (40 Cyc. 1550.)

The case of *Watkins's Admr.* v. *Watkins's Exrs.* (Ky.) 120 S. W. 341, holds:

"Nor can we hold that a devise of the income of the bonds passed the bonds themselves. That rule applies only in the absence of anything in the will indicating a contrary intention. It does not apply when the testator plainly indicates that only a part of the *corpus* is to be used if necessary to make the devisee comfortable. (30 Am. & Eng. Ency. Law, 2d ed. p. 758.)"

In *Bentley* v. *Kauffman,* 86 Pa. 101, it is said:

"That a bequest of income or profits will carry an absolute estate in the principal or *corpus* of the estate in some cases is well settled; but the ground of the conclusion in such instances is that no contrary intent of the testator appears to sever the product from its source, and

the fruits therefore carry with them that which bears them. * * * Hence, when the intent clearly appears to carry the *corpus* or principal over to others, the words of the will must be permitted to have their proper force. Here the bequest of the interest only for life, connected with the provision immediately following, is inconsistent with an intent to confer the principal absolutely upon him."

In *House* v. *Ewen,* 37 N. J. Eq. on page 373, it is said:

"The general rule is that when the interest or produce of a legacy is given to, or in trust for, a legatee, or for the separate use of such legatee, without limitation as to continuance, the principal will be considered as bequeathed. But, notwithstanding, as a general rule the gift of interest and dividends, standing by itself, is a gift of the *corpus,* yet if from the nature of the subject, or the context of the will, it appears that the produce or interest of the fund only was intended for the legatee, the gift of the interest will not pass the principal."

Page on Wills, at section 599, lays down the rule in the following words:

"Within the limits of the rule against perpetuities, the law recognizes the right of the testator to dispose of the income of his property by will, and gifts of this sort are constantly upheld. And where testator manifests a clear intention, he may give the income separate and apart from the principal, so that the beneficiary has no interest whatever in the property from which the income is derived. The intention to separate the income from the principal is generally manifested either by creating an express trust or by limiting the interest to a life interest in the income only."

See, also, *Mackay* v. *Mackay,* 107 Cal. 303, 40 Pac. 558; *Wynn* v. *Bartlett,* 167 Mass. 292, 45 N. E. 752; *Appeal of Eichelberger,* 135 Pa. 160, 19 Atl. 1006, 1014; *Phelps* v. *Phelps,* 143 Mass. 570, 10 N. E. 452.

Thus it will be seen that after all is said the real question for the court to decide is: What was the intention of Otto Hartung, as expressed in his will? From a consideration of the consuming purpose which animated this man, and of the portion of the will which leaves to appellant "the income from my estate * * * to be paid * * * annually," in contrast with those portions of the will which provide that in case appellant did not build the home as contemplated the residue of the estate should go direct to whichever of the contingent beneficiaries should comply with the terms of the will, it seems clear that it was the intention of the testator, in case appellant did build the home, to create an active trust; the trustees to manage the *corpus* of the trust fund and pay over annually to appellant the proceeds thereof, so long as it maintained the home.

4, 5. Under the second assignment of error, it is urged that appellant is entitled to the income of the estate of testator which accrued between the date of his death and the date of the establishment of the Royal D. Hartung Home, upon the general rule that:

"A residuary bequest, contingent in terms, carries the intermediate income, which is not disposed of but accumulates." (40 Cyc. 1569.)

Conceding the correctness of the rule, we do not think appellant can be said to be a residuary legatee. There is but one "residue" of an estate. It is that which is left after the payment of debts, legacies (specific and general), and satisfying other specific gifts. (*Frelinghuysen* v. *Insurance Co.*, 31 R. I. 150, 77 Atl. 98, Ann. Cas. 1912B, 237; *Stevens* v. *Underhill*, 67 N. H. 68, 36 Atl. 370; New Standard Dictionary; Webster's Inter. Dict.)

If we understand correctly the meaning of the term "residuary bequest," it is that the residue of an estate is bequeathed to a person, absolutely. As we have seen, such is not the fact in this instance. The residue of testator's estate does not go to applicant at all, but to

trustees, who are to pay over to appellant annually the income from the residue of the estate.

6. Appellant complains of the delay of the executors in closing up the estate. The executors made two reports before the final report was made. Both of these were "approved, allowed, and settled" by the court. There is no evidence in the record that the estate could have been settled sooner with advantage to the estate, and this court will not presume such to have been the fact. (*In Re Moore's Estate,* 83 Cal. 583, 23 Pac. 794.)

Perceiving no error in the record, it is ordered that the order and decree appealed from be affirmed.

By the Court, COLEMAN, J. (on motion to retax costs and for attorneys' fees) :

Since the filing of the opinion in this case, counsel for appellant have applied to the court for an order to retax the costs on appeal, and for an order awarding them attorneys' fees.

As to the first motion, we need simply say that the court is without jurisdiction to consider it. Paragraph 3 of rule VI of this court provides:

"If either party desires to object to the costs claimed by the opposite party, he shall, within ten days after the service upon him of a copy of the cost bill, file with the clerk and serve his objections. Said objections shall be heard and settled and the costs taxed by the clerk. An appeal may be taken from the decision of the clerk, either by written notice of five days, or orally and instanter, to the justices of the court, and the decision of such justices shall be final. If there be no objections to the costs claimed by the party entitled thereto, they shall be taxed as claimed in the cost bill."

From even a casual reading of this rule it will be seen that this court cannot consider objections to a cost bill except on appeal from a decision of the clerk of the court. The matter is not before us on appeal from such a decision.

In the matter of the motion for the allowance of attorney's fees, it is asked that the court enter an order directing the Grand Lodge of the Independent Order of Odd Fellows to pay the expenses of the proceedings heretofore had, including the attorneys' fees, "out of the funds coming to said Grand Lodge" from the Hartung estate.

In the first place, we do not see how we can make an order on this appeal which in legal effect would be a judgment in favor of the attorneys and against the appellant. No issue has been made up and tried in the lower court involving the question, and no such question was before us on appeal. To grant the order sought would be equivalent, in legal effect, to rendering a judgment against appellant in a proceeding in which it has not had its day in court.

If counsel for appellant are entitled to any compensation for their services out of the estate of decedent, we think it is entirely a matter within the province of the court below.

It is the order of the court that both motions be denied.