[No. 2217]

IN THE MATTER OF THE ESTATE OF OTTO HARTUNG, DECEASED.

[160 Pac. 782; 161 Pac. 715]

1. CHARITIES—CONSTRUCTION—DESIGNATION OF LEGATEES—CHARITABLE INSTITUTIONS—BEQUEST TO FRATERNAL ORDER TO ESTABLISH AN ORPHANS' HOME "WORTHY OF ITS NAME."

Under a will devising the residue of an estate to an Independent Order of Odd Fellows, the income therefrom to be paid over to them annually, if within five years from testator's death the order established a home for orphans "worthy of its name," the words "worthy of its name" did not require the expenditure therefor of the sum of $25,000 as specified for a school building in another paragraph of the will, but the will made the order itself judge as to whether or not the home was worthy of its name, subject to the right of the courts to finally determine the question.

2. CHARITIES—CONDITION—ESTABLISHMENT BY FRATERNAL ORDER OF A HOME "WORTHY OF ITS NAME."

A devise conditioned upon establishing by fraternal order of an orphans' home "worthy of its name" was satisfied by the establishment of a home which, considering the strength of the order in the state, the population of the state, and the general conditions existing therein, compared favorably with similar institutions of the order elsewhere.

3. CHARITIES—CONDITIONS— PERFORMANCE — SUFFICIENCY— ESTAB-
LISHMENT OF ORPHANS' HOME "NEAR" A CITY.
    A devise conditioned on the establishment of an orphans'
home "near" a city was satisfied by its establishment within
the city corporate limits; the apparent intention by such direc-
tion being to confine the location of the home to the vicinity of
the city, and not to exclude it from the city limits.

4. PERPETUITIES—CHARITABLE GIFT—"PUBLIC CHARITY."
    A bequest of the income of the residue of an estate to a
fraternal order if the order established an orphans' home as
provided therein, did not violate the common-law rule against
perpetuities, such home being a public charity, since its use was
not confined to any privileged or special class of orphans.

5. CHARITIES—CONSTRUCTION OF BEQUEST—CHARITABLE USE.
    A bequest of the income of an estate, to be paid over to a
fraternal order annually, if within five years from testator's
death the order established an orphans' home as provided
therein, *held* not void as imposing no imperative duty upon the
order to devote the money to a charitable use, since under the
will the income was to be used in the maintenance of the home.

ON PETITION FOR REHEARING

1. WILLS—CONSTRUCTION—INTENTION OF TESTATOR.
    Although the intention of a testator must appear from a
perusal of the will, although not necessarily articulated in
formal language, the court may take into consideration, in
determining such intention, the subject-matter, chief aim of the
testator, and all the surrounding circumstances.

2. CHARITIES—CONSTRUCTION—INTENTION OF TESTATOR—"MONUMENT."
    A will gave the residue of the testator's estate to defendant
fraternal order if, within five years from the date of his
death, the fraternal order should establish a home for orphans
and foundlings to be named after the testator's son, and pro-
viding, as an alternative, if the order should not accept, a
similar gift of the income of the residue to a school district on
condition they build an industrial school named after testator's
son, or, in default of the district's acceptance, a similar gift to
the state university to establish an industrial school fund named
after testator's son. *Held* that, the intention of the testator
being to provide a "monument" or artificial structure for the
purpose of preserving the memory of his son, the fraternal
order was not entitled to the annual income of the estate in any
event, but only so long as it maintained the home.

APPEAL from Second Judicial District Court, Washoe
County; *R. C. Stoddard*, Judge.

In the Matter of the Estate of Otto Hartung, deceased.
From an order denying motion by the Board of Regents
of the University of Nevada for a new trial and from

final decree of distribution, the Board of Regents appeals. **Affirmed.** Petition for rehearing denied.

*Geo. B. Thatcher*, Attorney-General, and *Hoyt, Gibbons & French*, for Appellants:

The decree of the lower court should be reversed and the necessary orders made to effect a modification of said decree so that it will be harmonious with the law, and it be ordered that the decree finally to be entered shall distribute the *corpus* of the estate to the board of regents of the University of Nevada, unless the school trustees of Reno shall, within the seven years allowed them by subdivision (B) of the tenth clause of the will of the testator, become entitled to the residuary estate of the testator by virtue of compliance with the provisions therein.

The bequest to the Independent Order of Odd Fellows of the State of Nevada was upon a condition precedent, and no legal right vested in said order until they had performed that condition. The condition precedent is thus set forth in the will:

"If within five years from the date of my death the said Independent Order of Odd Fellows of the State of Nevada, does establish a home worthy of its name, for orphans and foundlings near Reno, Nevada, and to be known by the name of the 'Royal D. Hartung Home for Orphans and Foundlings.'"

It is the contention of appellants that the Independent Order of Odd Fellows failed to comply with this condition precedent, in that it did not establish a home "worthy of its name" at any time or place, and that it never established a home "near" Reno.

The court will not ascribe to the well-known word "establish" a fanciful meaning, such as to inject into it the idea of "maintaining" an orphans' home. The requirement of the will would have been answered, so far as it purported to confer the income upon the order of Odd Fellows, when the home was created or brought into existence. (Words and Phrases, vol. 3, p. 2471.)

The dominant intent of the testator was not the establishment of a home, but the establishment of a home worthy to be known as the "Royal D. Hartung Home for Orphans and Foundlings." This is made manifest by the language of the will; and to eliminate a part of the intent, to wit, that the home to be established should be worthy to be known as the "Royal D. Hartung Home for Orphans and Foundlings," is not to carry into force the intent of the testator. The testimony shows that the only home ever attempted to be established by the Independent Order of Odd Fellows, in compliance with the terms of the will, was the purchase for the sum of seven thousand dollars, paying four thousand dollars and giving a mortgage for three thousand dollars upon the property, of a twenty-five-year-old, ten-room, wooden dwelling-house, situated in one of the most populous residential districts of Reno; and the testimony shows, furthermore, the extreme difference and dissimilarity between the homes usually established by different fraternal and benevolent organizations, and this old dwelling-house, situated upon two city lots, fronting on the most popular driveway in the city of Reno.

The main intent of the testator was not to benefit the Independent Order of Odd Fellows, but to perpetuate the memory of Royal D. Hartung; and when he used the words "worthy of its name," he prescribed with certainty the value and character of the home to be established.

The home was established "in" Reno, not "near" Reno. The will of the testator provided that the home should be established "near" Reno. The two words are different; they are words of opposition. They are not words which are used by persons of ordinary understanding or education to express the same idea, especially in the drafting of a will. That the words have a different meaning was practically admitted by the lower court; but, as stated in the opinion, by the doctrine of cy-pres, he practically construed them as being synonymous. The lower court mistook the doctrine of cy-pres and its functions. The doctrine has never been held to excuse the performance of a condition precedent. (*Doyle* v. *Whalen*, 32 Atl. 1022,

87 Me. 414, 21 L. R. A. 118.) Furthermore, this doctrine is brought into operation only when.it is necessary to prevent intestacy. In the present case no intestacy would result.

The will contains no provision as to what the Odd Fellows shall do with the income. As they have the power to devote it to noncharitable purposes, the grant was void, and no assurance that it would be devoted to charitable purposes can be made to cure the infirmity. The grant was of the income to the Independent Order of Odd Fellows, without any direction whatsoever as to the manner in which the organization should expend it. It is plain that it could be expended for social entertainments, or the like. It cannot therefore be said to be a charitable bequest. There may be lawful charities under the rule against perpetuities. If section 1418 of the Revised Laws could be construed to have intended that the Odd Fellows can hold in perpetuity funds "for the necessary uses, purposes, and ceremonies of the order," such construction would make so much of it unconstitutional, because perpetuities are strictly by the constitution limited to eleemosynary purposes.

The devise and bequest perpetually places the residuary estate of the testator in the hands of trustees to pay a perpetual income to beneficiaries who are not qualified under the rule of perpetuities to become and to be the beneficiaries of such a gift, the said organization not being "a charity" within the law such as to qualify it to benefit by said devise and bequest. The will does not require the Independent Order of Odd Fellows to apply the income of the estate to the maintenance or support of a home for orphans and foundlings, nor make any other provision as to what the said organization shall do with the income, but merely bestows upon the organization the income of the estate if the condition has been complied with. The bequest is not, therefore, to a public charity, so as to be legal under the constitution, which provides that "no perpetuities shall be allowed, except for eleemosynary purposes." (Const. Nev., art. 15, sec. 4; *Troutman* v. *De Bossiere Odd Fellows' Home*, 64 Pac. 33, 71 Pac.

286, 5 L. R. A. n.s. 695; *Pennoyer* v. *Wadhams*, 25 Pac. 722; *Burd Orphan Asylum* v. *School District*, 90 Pa. 29; *Philadelphia* v. *Masonic Club*, 160 Pa. 579; *Swift* v. *Beneficial Society*, 73 Pa. 362.)

There is no imperative duty to devote the money to charitable uses. (*In Re Sutro*, 102 Pac. 920; Perry on Trusts, vol. 2, secs. 711, 718; *Mason* v. *Perry*, 22 R. I. 475; *Fairfield* v. *Van Wyck's Exrs.*, 94 Va. 557; *Hadley* v. *Forsee*, 14 L. R. A. n. s. 49; *Goodale* v. *Mooney*, 60 N. H. 528; *Grimes* v. *Harmon*, 35 Ind. 198; *Spalding* v. *St. Joseph's Industrial School*, 107 Ky. 382, 54 S. W. 200; *Nichols* v. *Allen*, 130 Mass. 211; *Gairfield* v. *Lawson*, 50 Conn.501; *Johnson* v. *Johnson*, 92 Tenn. 559; *Hyde* v. *Hyde*, 64 N. J. Eq. 6; *Taylor* v. *Keep*, 2 Ill. App. 368; *Moseley* v. *Smiley*, 55 South. 143; *Hughes* v. *Daly*, 49 Conn. 34; *Tilden* v. *Green*, 130 N. Y. 29.)

Since the Independent Order of Odd Fellows is not a public charity, but an organization for the benefit and profit of its own members, the bequest to it is invalid. (Cases, 14 L. R. A. n. s. 68.)

In specifying alternative bequests, testator made careful provision for the expenditure of the income bestowed so that it should not in any event fail to accomplish his beneficent purpose and conserve the welfare of the public in general. (*Old South Society* v. *Crocker*, 119 Mass. 1, 20 Am. Rep. 200; *Babb* v. *Reed et al.*, 5 Rawl. 151, 28 Am. Dec. 650.)

*Thomas E. Kepner* and *C. E. Mack*, for Respondent:

Every condition of the bequest has been complied with. The Royal D. Hartung Home is an accomplished fact; it has been established, dedicated, and is being maintained. Testator required as a condition precedent that a home worthy of the name be established. The home has been established in strict accordance with the terms of the will.

The purpose of the testator was to establish a home for orphans and foundlings. It is too clear for argument that the will creates a good public charitable bequest, to

the administration of which the courts will give all necessary aid. (*Sears* v. *Chapman*, 158 Mass. 400; *Attorney-General* v. *Briggs*, 164 Mass. 561, 42 N. E. 118; *Hadley* v. *Academy*, 14 Pick. 240, 253; *Society* v. *Harriman*, 125 Mass. 321; *Davis* v. *Inhabitants*, 154 Mass. 224.)

Pursuant to the conditions named in the will, the Royal D. Hartung Home for Orphans and Foundlings has been established within the corporate limits of the city of Reno. It has been urged that the home, being established in the corporate limits of the city, is not "near" Reno. Testator did not define the location of the home. It might have been established anywhere within the jurisdictional limits of the respondent. No interpretation could be put upon the will that would make it imperative to establish the home "near" Reno, but not "in" Reno. "The word 'near' is of relative meaning, and its precise import can be determined only by surrounding facts and circumstances." (*Old Ladies' Home* v. *Hoffman*, 89 N. W. 1066; *Weeks* v. *Hobson*, 23 N. E. 215; *Fall River I. W. Co.* v. *Old Colony R. R. Co.*, 5 Allen, 221; *Barrett* v. *County Court*, 44 Mo. 197; *American D. & I. Co.* v. *The Trustees*, 29 N. J. Eq. 409; *Kirkbride* v. *Lafayette County*, 108 U. S. 208.)

By the Court, COLEMAN, J.:

This is an appeal by the board of regents of the University of Nevada from an order denying its motion for a new trial and from a final decree of distribution in the matter of the estate of Otto Hartung, deceased. This is the second appeal growing out of the construction of the will of Mr. Hartung, the former decision being reported in 39 Nev. 200, 155 Pac. 353.

The portions of the will necessary to an understanding of the questions involved read:

"Tenth, I give, devise and bequeath all the residue of my estate, both real and personal, as follows:

"(A) To the Independent Order of Odd Fellows of the State of Nevada the income from my estate to be paid over to them by my executors and trustees annually, if

within five years from the date of my death the said
Independent Order of Odd Fellows of the State of
Nevada, does establish a home worthy of its name, for
orphans and foundlings near Reno, Nevada, and to be
known by the name of the 'Royal D. Hartung Home for
Orphans and Foundlings,' but if the Independent Order
of Odd Fellows of Nevada does not accept the provision
of this bequest, within the time herein mentioned,
then   *   *   *

"(C) I give and bequeath all my estate, both real and
personal not otherwise herein devised, to the board of
regents of the State University of Nevada.   *   *   *"

The lower court found that the Independent Order of
Odd Fellows had established the home as contemplated
by the terms of the will.

Appellant urges on this appeal: (1) That the Inde-
pendent Order of Odd Fellows (hereinafter referred to
as appellee) did not establish a home "worthy of its
name"; (2) that the home, having been established
within the corporate limits of Reno, was not a compli-
ance with the terms of the will, which provided that it
should be established "near" Reno; (3) that the devise
and bequest to appellee offends against the common-law
rule against perpetuities; and (4) that the bequest is
void because no imperative duty is imposed upon appellee
to devote the bequest to a charitable use. We will con-
sider these questions in the order mentioned.

1. It is strenuously contended by counsel for appellant
that the home established by appellee is not worthy of
its name. It is urged that since the testator, by para-
graph B of his will, required that the Reno school
district erect a building to cost not less than $25,000, in
case it should acquire the property of testator, that it
must be concluded that the testator had in mind that
appellee should erect a home to cost equally as much.
We are unable to adopt this view. It is to us evident
at a glance that the testator did not have in mind that
the home to be erected by appellee should cost $25,000,
for if so he would have specified the amount, as he did in

paragraph B of his will. Having thought of requiring the school board to erect a building to cost $25,000, it would have been the most natural thing in the world for the testator to have designated that amount as the cost price of the home had he had such an idea in his mind. The very words "worthy of its name" convince us that he had no such idea, for the reason that, having decided upon $25,000 as the cost price of the school, and the ease with which he could have fixed a similar figure as the cost of the home had he so contemplated, he sought to express an entirely different idea, and used an expression which was evidently the result of mature reflection.

It is obvious that the testator meant to convey a distinct idea by the words which he used, and it is equally obvious that he intended that the appellee should be the judge as to whether or not the home established was "worthy of its name," subject to the right of the courts to finally determine the question. Taking this view, we must determine whether the home established by appellee is one worthy of its name.

2. Since the standard of everything is established by a comparison of it with other things, we must necessarily compare the home established with other similar homes; and we think, too, that it is only right in so doing to take into consideration the strength of appellee in Nevada, the population of the state, and the general conditions existing therein. Only one witness gave testimony relative to similar institutions in other states, and from his testimony the home in Reno, everything considered, compares very favorably with similar institutions elsewhere; and, in considering this testimony in connection with other testimony and the population of the state, we cannot say that the lower court was not justified in holding that the home in question is worthy of its name.

3. The next point urged is that appellee failed to comply with the terms of the will, in that the home

which was established is "in" Reno, instead of "near" Reno. The will reads:

"If within five years from the date of my death the said Independent Order of Odd Fellows of the State of Nevada does establish a home worthy of its name, for orphans and foundlings near Reno, Nevada. * * *"

It is the contention of appellant that it was the intention of the testator, as expressed in the will, that a home for orphans and foundlings should be established, not within the corporate limits of the city of Reno, but "near" the city of Reno, and that the establishment of the home within the city limits was a failure to comply with the terms of the will, and hence that appellee had forfeited all claim to the property of the testator. On the other hand, it is claimed by appellee that by the language of the will the testator did not intend to designate the place where the home should be established, but that he intended that wherever the home should be established it should be for "orphans and foundlings near Reno."

We would do violence to no rule of construction we know of if, after a consideration of the language and punctuation of the clause in question, we should adopt the idea suggested by appellee; but we do not deem it necessary to determine this point, since, in the view we take, the judgment must be affirmed. All of the authorities hold that the word "near" is a relative term, but we are satisfied that as a general rule the word is used to designate a place slightly removed from a given point. Of course, there are exceptions to this rule; a notable one being the use of the word in diplomatic parlance as "near the Court of St. James." The real question, of course, is to ascertain the intention of the testator; and, as Mr. Dwarris says:

"Where the intention of the testator is clear and obvious, it has been held that it will control the legal operation even of technical words." (Dwarris, p. 176.)

"It is a familiar rule that the court will vary the strict

meaning of words when necessary to effect the intention of the testator." (*Old Ladies' Home* v. *Hoffman,* 117 Iowa, 719, 89 N. W. 1067.)

The question is: What idea did the testator desire to express by the language used? As one who had been a member of the Independent Order of Odd Fellows for years, he, no doubt, knew that the jurisdiction of the Grand Lodge of the Independent Order of Odd Fellows took in the entire State of Nevada, and he knew that, unless he indicated some locality as the place where the home should be established, appellee could establish it at any place in the state, no matter how remote from the center of population; and, with this idea in mind, we are of opinion that by the language used he intended that the home should be established in the vicinity of Reno, which was his place of residence in his lifetime, the seat of the State University, the largest city in the state, and the center of population, rather than at some remote place. The court, in the case of *Old Ladies' Home* v. *Hoffman, supra,* had under consideration a case similar to the one at bar, in which the following language is used:

"It may be conceded that a condition precedent to the taking of a bequest must be literally performed, but the trouble in this case does not arise over the application of this rule. The difficulty here is to determine what the condition is; for, if the intent of the testator was to require her beneficiary to be located within the corporate limits of Muscatine, the defendants have no case. But was that her intention? Her primary purpose was to endow an orphans' asylum which should be connected with her home city. If none should be in existence at the end of five years from her death, her bequest was then to go to an old ladies' home located there. Her thoughts were first of all for the fatherless and motherless waifs of the community, and they were the primary objects of her bounty. Can it be said that she intended to deprive them of the great benefits to be derived therefrom simply because the home which should be provided for

them should be located just across a geographical line, though in fact recognized as one of the charitable institutions of the city she named? We think not. To us it is quite clear that she did not have in mind strict geographical lines, and that her sole purpose, as to locality, was to endow an institution which should be so clearly connected with her home city as to be recognized as a part thereof, and this is clearly the situation the defendant occupies."

We think that what was said in that case is peculiarly applicable to the case at bar, and we are satisfied that it was not the intention of the testator that those who selected the site for the home should search out the boundaries of the city of Reno to be sure that the home might be at least an inch outside of those boundaries, or forfeit its claim to the property bequeathed. Had the appellee placed the home one inch outside the corporate limits of the city of Reno, it would have been a compliance with the terms of the will, according to appellant's theory, notwithstanding the fact that at the very moment of its establishment a movement was under way to extend the city boundaries so as to take in the site of the home thus established.

4. Does the bequest offend against the common-law rule against perpetuities? We think not. It is not contended that a bequest to a public charity offends against this rule, either at common law or under our constitutional provision, but it is insisted that the bequest in question is not to a public charity. Appellant relies with great confidence upon the case of *Troutman* v. *Home,* 66 Kan. 1, 71 Pac. 286, to sustain its contention. Instead of sustaining appellant's contention, we think the case is authority to the contrary. In that case the testator bequeathed her property to "orphans of deceased Odd Fellows," while the testator in the case at bar left his property for "orphans and foundlings," without limitation to any particular orphans and foundlings. In that case the court quotes from a Pennsylvania case which clearly shows the distinction between the case at bar

and the Kansas case. The language quoted reads as follows:

"A public use, whether for all men or a class, is not one confined to privileged persons. The smallest street is public, for all have an equal right to travel on it; but a way used by thousands, which may be shut against a stranger, is private. Would Girard College be a public charity if the male children entitled to admission were limited to sons of deceased Masons or Odd Fellows? If Pennsylvania Hospital closed its gates to all but Methodists or Baptists having recent injuries, the people would not believe it a purely public charity in the intendment of their constitution. A charity for the poor of a parish or township is public; but not if confined to poor Presbyterians in the municipality. Public charities may be restricted to a class of the people of the state or of a municipal division; at the same time, they must be general for all of the class, within the particular municipality. 'Thus a blind asylum is only for the blind in the community.' If it be completely public, all the blind in that community are on an equal footing, and, should its capacity be insufficient for all, there is no mistaking justice in the order of admission. To open its doors only to the blind of a particular religious denomination, or of a beneficial association, or of a political party, shuts them against the public. A known and recognized class, though not generally poor, or diseased, or decrepit, may be the subject of a public charity, as sailors; yet, if the endowment were limited in its benefits to sailors who are members of a designated sect, there could hardly be two opinions of its character."

The point is so clearly distinguished that we do not deem it necessary to elaborate.

5. It is also urged that the bequest is void because no imperative duty is imposed upon appellee to devote the money to a charitable use. We cannot accede to this construction of the will. Upon our former consideration of this will (*In Re Hartung's Estate, supra*) we held that

the proceeds of the residue of the estate should go to appellee "so long as it maintained the home." We interpreted the will then to mean that such proceeds should be used in the maintenance of the home. From a reading of the will we can arrive at no other conclusion. If such had not been the intention, the testator would have bequeathed the property directly to appellee, instead of creating an active trust and directing that the proceeds be paid annually to appellee.

Perceiving no error in the record in this case, it is ordered that the judgment be affirmed.

Norcross, C. J.: I concur.

McCarran, C. J., concurring:

I concur. As to the first proposition urged against the appellee, the Independent Order of Odd Fellows, to wit, that the home by that order established was not one "worthy of its name," as that expression was intended by the testator, it appears manifest to me that the expression thus used in the will was not one which was to constitute a measure of value estimable in dollars and cents, but, on the other hand, was an expression used by the testator in connection with and in the spirit of the object sought to be accomplished, namely, the establishment of a place for orphans and foundlings worthy of the name of home. If the reasoning is correct, the amount invested in the place established as a home was not the guiding motive or the uppermost thought of the testator; rather was it that the place when established should afford to those who were the recipients of its charity the protection, comfort, affection, and guidance contemplated by the word "home"; and, as I view the record and expressions made in the will, it may not be far-fetched to say that the expression "a home worthy of its name" may have emanated from the remembrance borne by the testator of the home, and protection, the affection, and guidance which he in his lifetime had

given to his adopted boy, whose name, it was designated by the will, should be perpetuated by this establishment which the testator sought to support by the income from his estate.

The second proposition, that the home established by the Independent Order of Odd Fellows did not comply with the terms of the will, inasmuch as it is in fact "in Reno," rather than "near Reno," must be resolved in the light of the record before us, as well as from the expressions contained in the will, and from both we must as best we can arrive at the intention of the testator. The activities of his life were centered in and about Reno. The property the income of which was to be devoted to the support of the home he sought to have established was located in Reno. He had been in his lifetime an accumulator and creator of property within the city of Reno. It would appear as though his life's earnings and accumulation had been devoted, in a small degree, at least, to the upbuilding of that community. His adopted son, Royal D. Hartung, in honor of whose memory he sought to have this institution created, had been reared and had spent the years of his life with the testator within the city of Reno. It was a charitable institution that would perpetuate the name of Royal D. Hartung, one that by its nature would blend with the life of Royal D. Hartung, that the testator sought to have established. As it appears to me from the record here, the end sought to be accomplished by the testator was to endow an institution for orphans and foundlings, the existence of which should perpetuate the name of Royal D. Hartung within the community in which the life of the latter had been passed. It was, as I view it, the principle to be carried out in the locality designated that was uppermost in the mind of the testator, rather than the question of its technical position within or without the boundary lines of the city of Reno.

As to the third and fourth contentions, i. e., that the devise and bequest offend against the law of perpetuities, and that the bequest is void because no imperative duty

is imposed upon the appellee to devote the bequest to a charitable use, I think it unnecessary to emphasize the conclusion reached by Mr. Justice COLEMAN.

## ON PETITION FOR REHEARING

By the Court, COLEMAN, J.:

Counsel for appellant have filed a petition for a rehearing. In the petition it is not contended that the court erred upon any points considered in the opinion, except the one last touched upon. After quoting from the opinion of the court, the petition says:

"In other words, the court has stated a conclusion which purports to be the interpretation of a will, arrived at by the discovery of the testator's intention, and we shall maintain that the court is in error and reached the conclusion by an erroneous path contrary to clear legal principles applicable to the subject."

Counsel then devote twenty-odd pages of their petition to a consideration of the law applicable to the question involved. A succinct statement of counsel's contention is contained in the following language of the petition:

"The court can indeed give effect to any intention of a testator which he has shown by the words that he has used, *even though it has not been articulated in formal language; but such an intention must appear from a perusal of the will.* (Italics ours.) It cannot be inferred from mere silence; much less can such an inference be founded upon bare conjecture as to what a testator would have said if he had foreseen the events which have happened since his death. We cannot speculate as to his intentions and make for him such a will as we may consider that he now, in view of the present circumstances, would have made."

1. We are in hearty accord with the views expressed, but we also think that we may take into consideration, in determining the question now before us, the subject-matter, the chief aim of the testator, and all the surrounding circumstances. We were guided by these

principles when we rendered the original opinion herein. We will now consider the question more at length.

2. The will, so far as it throws any light upon the question under consideration, reads as follows:

"Tenth, I give, devise and bequeath all the residue of my estate, both real and personal, as follows:

"(A) To the Independent Order of Odd Fellows of the State of Nevada the income from my estate to be paid over to them by my executors and trustees annually, if within five years from the date of my death the said Independent Order of Odd Fellows of the State of Nevada, does establish a home worthy of its name, for orphans and foundlings near Reno, Nevada, and to be known by the name of the 'Royal D. Hartung Home for Orphans and Foundlings' but if the Independent Order of Odd Fellows of Nevada does not accept the provision of this bequest, within the time herein mentioned, then—

"(B) I give and bequeath all my estate to the board of school trustees of Reno, Nevada, provided they will build and establish within the Reno school district an industrial school, the land and building to cost not less than twenty-five thousand ($25,000) dollars. The cost of this land and the building shall be paid by the taxpayers of the Reno school district. The said school shall be known as the 'Royal D. Hartung Industrial School,' and my estate shall be excepting where already invested in safe, and good income-bearing bonds, reduced to cash and loaned out upon first-class real estate security, the income thereof to be considered as an annual endowment fund and the income thereof only to be expended annually by the board of trustees for the purpose of paying the teachers, or supplying facilities for instruction in the Royal D. Hartung Industrial School. If, after a reasonable time has elapsed not exceeding seven years after the date of my death, the city of Reno fails to accept the provisions of this bequest, then—

"(C) I give and bequeath all my estate, both real and personal not otherwise herein devised, to the board

of regents of the State University of Nevada, that my
estate be reduced by them to cash, or good income-
bearing securities, and loaned out upon first-class real
estate security and the income thereof alone to be
expended annually, or at such other period as such
trustees may deem best in assisting poor, worthy stu-
dents, of high moral character, in obtaining an indus-
trial school or industrial college education in the city
of Reno, and I expressly direct that the principal of said
gift to said board of regents be kept intact and that the
fund be kept a perpetual fund to be known as the
'Royal D. Hartung Industrial Education Fund.' * * *"
(*In Re Hartung's Estate,* 39 Nev. 200, 155 Pac. 353.)

In considering this will while before us in another
contest, we said:

"It is apparent at a glance that the paramount pur-
pose of the testator was the establishment and main-
tenance of a permanent monument to the memory of
his son. So consumed was he with this idea and pur-
pose, that he imposed three conditions in his will as
an assurance that his wishes in this regard would be
carried out. The medium through which he most
desired the attainment of his aim was the Independent
Order of Odd Fellows, for it was to that organization
he offered the first inducement, as appears from para-
graph 10 of his will. Should the organization named
fail to avail itself of the opportunity offered, then the
Reno school district or the state university, in turn,
was to take the residue of the estate of the testator."
(*In Re Hartung's Estate, supra.*)

If our conclusion as thus expressed was correct, and
we think it was, then we naturally ask: What is a
monument? What are the sentiments which animate
men in erecting them? These, we think, are legitimate
questions of inquiry in this connection. A monument is
nothing more or less than an artificial structure, brought
into existence for the purpose of perpetuating the
memory of some person or event. In this instance the

testator sought to perpetuate the memory of his son, Royal D. Hartung.

We think no one would be so reckless in his statement as to say that the respondent, though having established a home as contemplated in his will, would be faithful to its trust if it were now to abandon the home thus established. If such a thing were done, the real purpose of the testator would be defeated. But the testator took the precaution to guard against such a consequence. In the first instance he imposed upon an organization, whose principal aim is to dispense charity, the erection and maintenance of the home. He imposed a trust in that organization, and he evidently had faith in its fidelity to its trust. But that the perpetuation of the monument which he sought to have erected might be assured, he did not leave the matter entirely to the good faith of that organization, but, as an additional guaranty that the trust which he imposed might be faithfully performed, he left his estate to trustees, with directions that they pay over to respondent annually the income therefrom.

It will be noted, from a reading of that portion of the will which we have quoted, that, no matter which of the institutions mentioned therein eventually became the beneficiary under the will, the income alone as it accrued annually could be used, showing clearly the purpose of the testator to keep intact the principal of the estate for all time.

We think that we are safe in saying that the beneficiary under paragraph A of the will is not entitled to the annual income from the estate in any event, but only so long as such beneficiary maintains the home. Then, if the consuming purpose of the testator was the erection and maintenance of the monument to his son, surely we cannot escape the conclusion that the testator intended the income to be used in the attainment of his consuming purpose. What else could have been his intention? We are at a loss to surmise.

It is ordered that the petition for rehearing be denied.