IN THE MATTER OF THE ESTATE OF CAROLINE ROEBLING WALTERS, DECEASED.

MARGARET ALLISON HAGNER SHARP AND PETER JAY SHARP, AS GENERAL GUARDIAN OF PETER HAGNER SHARP, APPELLANTS, v. FIRST NATIONAL BANK OF NEVADA, RESPONDENT.

No. 4147

August 28, 1959         343 P.2d 572

*Hawkins, Rhodes & Hawkins,* of Reno, and *Edmund T. Delaney,* of New York, for Appellant Margaret Allison Hagner Sharp.

*Lloyd V. Smith,* of Reno, for Appellant Peter Jay Sharp, as General Guardian of Peter Hagner Sharp.

*John S. Belford,* of Reno, for Respondent.

**OPINION**

By the Court, BADT, J. :

Appellant Margaret Allison Hagner Sharp, herein-after referred to as Mrs. Sharp, petitioned the court below for a construction of the will of Caroline Roebling Walters, testatrix, petitioner's mother, the removal of the First National Bank of Nevada as trustee of Trust No. 541–1, and the appointment of petitioner as trustee of said trust. This appeal is from the order denying the petition.

The petition for construction of the will sought a determination that it was the intention of the testatrix that petitioner should succeed as trustee of a trust created by the will of the testatrix, upon attaining her majority, in the event that the trustees named in the will should not then be serving as trustees.

The petition also sought an order removing the First National Bank of Nevada for cause, on the ground that the bank had improperly administered the trust created for her, and that in its relations with her during the course of its administration it had been hostile, uncoop-erative, perfunctory and lacking in loyalty, in violation of its duties as trustee, and had failed and neglected to seek the advice and instructions of the court with respect to the construction of the will of the testatrix. With respect to this phase of the appeal, the trial court made findings contrary to the contentions of the petitioner, found that the bank had administered the trust properly, had not been hostile, uncooperative, perfunctory, or lack-ing in loyalty, and had in no wise violated its duties as trustee. This issue was the subject of a large part of the evidence adduced and was the subject matter of many exhibits. It had to do in great part with the matter of

investment of the trust funds. There was ample evidence to sustain the court's findings and we find nothing in the record to warrant a finding of violation of the trust by the bank. This phase of the appeal will, therefore, not require further consideration by the court although it will be necessary to include references to the nature and extent of the trust and its administration in order to give a complete picture of the situation.

The will of Mrs. Walters, petitioner's mother, was admitted to probate January 29, 1940. Under such will the residuary estate was to be divided into equal shares and left in trust for Mrs. Walters' two daughters, Mrs. Sharp, the petitioner, and Mrs. Du Bose, her sister, for their lives, with remainder to their descendants. The will, executed in 1938, named the father of the girls, Alexander B. Hagner, and George Cutting as trustees, and the uncle of the girls, Robert C. Roebling, as alternate trustee. However, by a codicil executed in 1939 Mr. Hagner was removed as trustee and Mr. Roebling substituted. Such action followed the separation of the Hagners, which culminated in a divorce. This left as the named trustees Mr. Cutting and Mr. Roebling, with no named alternate. Item V of the will reads as follows: "In case of death, resignation, or inability to serve of either of my trustees hereinabove named during the minority of my said children, I direct that my brother Robert C. Roebling shall succeed as trustee. If such event should occur, however, after any one of my surviving children shall have reached the age of 21 years, I direct that such child shall succeed as such trustee, and if the event should occur after two or more of my surviving children shall have reached the age of 21 years, I direct that the elder or eldest shall succeed as such trustee." On April 27, 1942 both named trustees, Mr. Cutting and Mr. Roebling renounced. This occurred during the minority of both children, Mrs. Sharp being then aged ten years and her sister, Mrs. Du Bose, aged five years. Thereupon the mother of the testatrix, Mrs. Blanche O'Brien, as guardian of the children, petitioned the court for the appointment of the respondent bank to fill the vacancy. The order was made and the bank

appointed. It thereupon set up two trusts, one for Mrs. Sharp and her descendants, which it designated as Trust No. 541–1, and one for Mrs. Du Bose and her descendants, which it designated as Trust No. 541–2. It has continued to administer both trusts up to the present date. This appeal does not concern Trust No. 541–2.

On May 10, 1952 Mrs. Sharp attained the age of 21. Thereafter difficulties arose between her and the bank. Mrs. Sharp criticized the bank's judgment in the matter of the trust's investments, distribution of income, dealings which she characterized as uncooperative, particularly with reference to her opinion as to the proper investment of trust assets based on advice given to her by investment counsel, and criticized what she thought were excessive charges by the bank as trustee. The aggregate of the two trusts at the time of the bank's appointment amounted to about $1,000,000 and such aggregate at the present time appears to be in the neighborhood of $2,500,000. As above noted, we are concerned on this appeal with the matter of determining the intention of the testatrix with reference to the appointment of a trustee.

In this respect the court came to the following conclusion: "That from a construction of the will and codicil it was not the intention of the testatrix that the eldest child should inevitably succeed to the position of trustee but that the eldest child should succeed solely if the death, resignation, or inability of the original trustees should take place during the child's majority. Since the event occurred during the eldest child's minority, the intention of the testatrix as expressed in the will and codicil did not give the eldest child a right to succession, although the named trustees were not then serving as such." Error is assigned in this conclusion.

Respondent, in sustaining this conclusion, announces itself in full accord with the general rule that in the construction of a will the courts seek to ascertain the intention of the testator (In Re Hartung's Estate, 39 Nev. 200, 155 P. 353, 159 P. 864), but insists that such intention must be found in the words used by the testator and

that if such words are unambiguous there is no occasion for construction. Respondent cites 2 Page, Wills, §§ 919, 921; 95 C.J.S. Wills, § 591; 57 Am.Jur. Wills, § 1124; and relies particularly on Jones v. First National Bank of Nevada, 72 Nev. 121, 123, 296 P.2d 295, 296, where this court said:

"A court may not vary the terms of a will to conform to the court's views as to the true testamentary intent. The question before us is not what the testatrix actually intended or what she meant to write. Rather it is confined to a determination of the meaning of the words used by her." It further quoted Wigram (Extrinsic Evidence in Aid of the Determination of Wills, Second American Edition, pp. 53, 54) as follows: "In other words, the question in expounding a will is not—What the testator meant? as distinguished from—What his words express? but simply—What is the meaning of his words?"

We do not question this rule. It applies, however, to the construction of an express provision of a will. Under the facts of this case, we do not deal with that rule but with what has often been referred to as the rule's complement, applying in situations where there is no express provision to construe but, rather, a failure to make any provision at all. This has been expressed in Brock v. Hall (Cal.App.), 198 P.2d 69, 72, affirmed 33 Cal.2d 885, 206 P.2d 360, 11 A.L.R.2d 672, in the following language: "[T]he intention of the grantor need not have been expressed by specific words, but may be derived from the entire instrument as a whole, from its general scheme, or from informal language used, by necessary implication, i.e., implication not based on conjecture, but so strong that a contrary intention cannot be supposed to have existed in his mind." In Jones v. First National Bank we applied the primary rule in order to determine what was meant by the specific bequest, "To my husband John Paul Jones I bequeath a livable wage until his death not to exceed $200 a month up to $2400." There was no occasion to consider the complement to that rule which is applicable here. In the instant case we find a contingency for which the trustor had not specifically provided, but are

able, through a consideration of the entire trust instrument, to determine the trustor's intent in the event of such contingency.

We may note first that this court In Re Hartung's Estate, 39 Nev. 200, 155 P. 353, 354, 159 P. 864, in considering an assigned error in the district court's decision as to what was the intention of the testator expressed in his last will, emphasized "that the cardinal rule of interpretation of wills is to ascertain the intention of the testator."

The rule stated in Brock v. Hall, supra, is followed in In Re Watland, 211 Minn. 84, 300 N.W. 195; Eustace v. Dickey, 240 Mass. 55, 132 N.E. 852, 858; Dittemore v. Dickey, 249 Mass. 95, 144 N.E. 57; Metcalf v. Framingham Parish, 128 Mass. 370, 374; and Adams v. Cook, 15 Cal.2d 352, 361, 101 P.2d 484, 489. In Metcalf v. Framingham Parish, supra, the court said:

"The decision of this question doubtless depends upon the intention of the testator, as manifested by the words that he has used, and an omission to express his intention cannot be supplied by conjecture. But if a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court must supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared."

Applying to our construction of Mrs. Walters' will the principles established in the foregoing cases, we have no difficulty in coming to the conclusion, contrary to that reached by the learned trial judge, that it was the clear intention of the testatrix that her eldest child should eventually succeed as trustee; that such succession should be given effect after the eldest child attained majority; that it was not a condition of such succession of the eldest child as trustee that a vacancy in the trusteeship must occur only after such child attained her

majority; that it cannot be said to have been the intention of the testatrix that the succession of the eldest child as trustee would be forever defeated by the fortuitous circumstance that the vacancy occurred during her minority and that out of necessity respondent First National Bank, a corporation having perpetual existence, had been appointed to administer the trust.

In reaching this conclusion we note certain facts that stand out persuasively. The testatrix never manifested any intention to have respondent bank act as trustee. The bank was not mentioned in the will. Had either of the named trustees died or resigned or renounced after Mrs. Sharp became 21 years of age, there would have been no question that she would have been entitled to be appointed trustee. Manifestly, if the vacancy occurred while both daughters were minors, neither could have qualified as trustee. The provision for the appointment of the alternative trustee to fill a vacancy occurring during such minority was in our opinion simply a recognition of such obvious situation and not the creation of a condition. The appointment of the bank, after the renunciation of the named trustees, and at the time when Mrs. Sharp was ten years old and Mrs. Du Bose five, was made by reason of such contingency then existing.

The testatrix by her will and codicil named two individual trustees and an individual alternate trustee. She apparently did not have in mind the appointment of a bank, trust company, or other corporate trustee. When the testatrix separated from her husband Hagner, she removed him as trustee, changed the appointment of Roebling as an alternative trustee to a named trustee (in place of Hagner) but neglected to name one or more alternates in case Roebling and Cutting failed to qualify or continue to act. Hagner, Cutting, and Roebling were all one generation older than the two children, so that it could have been expected in the normal course of events, first, that the trustees would be acting at the time the children attained majority (note that even the possibility of more children was contemplated), and secondly, that a time would occur in the course of the administration of the trust when the eldest daughter would succeed.

That event, however, could never occur if the fortuitous appointment of the bank should be perpetual. It appears from the testimony of Mrs. Sharp that the use of personal trustees was in keeping with family policy. In like manner her uncle had been appointed trustee under her grandfather's will, to take office as such at the age of 21, and he was so appointed. The actual language of the will does not supply the omission.

Here a contingency arose for which provision was not made. The court has then to make a choice of one of two conclusions in determining the intent of the testatrix. She had provided that in the event of vacancy after Mrs. Sharp attained the age of 21, Mrs. Sharp should be appointed. In the event of a vacancy before Mrs. Sharp attained the age of 21, no provision was made. The vacancy occurred when she was ten years old, and the bank was appointed in an ex parte proceeding. The petitioning guardian could of course speak for the minors only for the period of their minority. Neither appellant, then ten years of age, nor her sister, then five, could speak for herself. The named trustees, having renounced, were not interested. When appellant became 21 and sought her own appointment the bank insisted, and insists on this appeal, that a condition of her right to appointment was the occurring of a vacancy after she became 21; that such condition never occurred, that it cannot occur, that she can never be appointed. We can come to no other conclusion but that the acceptance of such contention would be the complete frustration of the trustor's intentions as gleaned from the four corners of the trust instrument and the conditions and circumstances appearing in the record.

The questions herein discussed and determined have no bearing upon the disposition of the bank's Trust No. 541–2, having to do with the trust estate of Mrs. Du Bose for her life, with remainder to her descendants, as it appears from the record that she has requested that the First National Bank of Nevada continue to administer her trust estate. It has to do only with the appeal of Margaret Allison Hagner Sharp and of Peter Jay Sharp as general guardian of Peter Hagner Sharp

involving Trust No. 541–1 of respondent First National Bank of Nevada.

Reversed and remanded with instructions for the entry of an order for the removal of the bank as trustee and the appointment of Margaret Allison Hagner Sharp as trustee of the trust created by the last will and codicil thereto of Caroline Roebling Walters, deceased, in favor of the said Margaret Allison Hagner Sharp and her descendants, under such proceedings as may appear proper. Each party shall pay her, his, and its own costs on this appeal.

MERRILL, C. J., and MCNAMEE, J., concur.