# In Re PARONI'S ESTATE

### No. 2992

April 10, 1936.                                    56 P.(2d) 754.

*W. R. Reynolds,* for Appellant:

*Geo. P. Annand,* for Respondents:

## OPINION

By the Court, COLEMAN, J.:

This is an appeal from an order of partial distribution of an estate, and involves the interpretation of a will.

Phillip Paroni, the testator, was born in the Italian canton in Switzerland, and came to this country when about sixteen years old. He settled in Eureka, in this state; where he died when about sixty-seven years of age, leaving neither widow, offspring, father, or mother.

By the terms of the will, deceased provided that all

that belonged to him shall be divided "fra nepotti" and my sister Marie.

The words in the will over which there is some controversy are "fra" and "nepotti," though the chief contention relates to the interpretation to be given to "fra." The appellant contends this word should be interpreted to mean "between," whereas respondents contend that it should be interpreted to mean "among."

At the time the will was written the testator had a sister Mary or Marie, and as nephew and niece, the two children of his sister Marie, all of whom resided, and now reside, in Switzerland, and three nieces and two nephews, the children of his sister Rose, four of whom were living in California and one in Oregon. Subsequent to the making of the will, but prior to the death of testator, one of the California nephews, Walter Paroni, died, leaving a son, Walter Paroni, Jr., who is still living.

The theory of counsel for appellant, as expressed in his brief, is as follows:

"The questions on appeal are limited to two main points. The appellant claiming that the gift is one to a composite class of two units, one unit consisting of the nephews and nieces, and the other the sister, Marie Paroni, the appellant herein, and that the whole estate should be divided equally between the two units. That is, one half to each unit.

"2. That the grandnephew takes nothing, because of the class character of the gift, and that our statute, section 9922 N. C. L., is inapplicable to class gifts."

The lower court rejected the theory of appellant, and held, in substance, that had Walter Paroni survived the testator the estate should be distributed equally among the nieces, nephews, and Marie, the sister; but since testator survived Walter Paroni, that Walter Paroni, Jr., was entitled to one-eighth of the real estate, but that as to one-eighth of the personalty the testator died intestate—this being the portion which would have gone to Walter Paroni, the nephew, had he survived the testator.

The appellant, to sustain her contention, called as

a witness Dr. Benjamin F. Chappelle, professor of Romance languages at the University of Nevada, who, after taking degrees at universities in America, studied extensively in Europe. He is unquestionably eminently qualified as a translator from Italian into English. Relative to the use of the word "fra," Dr. Chappelle testified:

"Primarily 'fra' would be 'between.' Sometimes it is used to translate the idea where we say among. * * *

"Q. The word may mean within, it may mean between, and it may mean among? A. The primary meaning is between.

"Q. But it may mean among? A. It may mean among."

Paul DeMartini, a witness called in behalf of respondents, testified as to his qualifications as an interpreter. It appears from his testimony that he is a man of limited education; that he is a publisher of an Italian paper; that he had been the official Italian interpreter of the superior courts of San Francisco for twelve years. He testified:

"Q. What did you interpret the word 'fra' as used in that will to mean? A. Among.

"Q. May it be between? A. I don't believe so from the context of the document and because it speaks of a class and not of two.

"Q. Are the Italian words 'fra' 'tra' and 'infra' interchangeable in their use? A. They are to a great extent. 'Fra' and 'tra' are. 'Infra' is also by many people who are not educated. 'Infra' is more in the sense of within than between. But 'fra' and 'tra' are interchangeable.

"Q. What may the word 'fra' mean? A. It may mean between and among depending upon its use in the sentence, the context of the sentence.

"Q. The word 'tra' what does that mean? A. The same thing would apply.

"Q. The words 'infra,' 'fra' and 'tra' are synonymous? A. Yes.

"Q. During your official position as Italian interpreter for the Superior Courts in the County of the Pacific,

City of San Francisco, State of California you have had occasion to come in contact with a great many Italian people, have you not? A. Many, many of them every day.

"Q. Has it been your experience that they are very careful in the discrimination, in the use of their words? A. They are not, absolutely not.

"Q. Have you ever heard an Italian speaking concerning more than two people use the word 'fra'? A. Yes, sir. Often, very often.

"Q. Have you heard an Italian when speaking of more than two people use the word 'tra'? A. Occasionally but not as a rule.

"Q. Which would you say was most frequently used among the middle class of Italian people? A. 'Fra'.

"Q. What language would an Italian be likely to use when disposing of his property to a sister and his nephews, one-half to his sister and one-half to his nephews? A. It would be in specific terms.

"Q. Would you state it in Italian? A. I would have to write it.

"Attorney Vargis: Write in and then read your translation. A. The property of which I possess should be divided, one-half to my nephews and one-half to my sister Maria.

"Attorney Vargis: Suppose you wanted to divide it between all of them. A. My property should be divided among my nephews and my sister."

J. B. Biale, a prominent merchant of Eureka, was also called as a witness in behalf of respondents. He testified that he was from Genoa, Italy; that he had known testator for more than forty years, and was employed by him for some time as a clerk in a general store; that he kept the books and transferred the entries in the daybook into the journal; that often deceased made entries in the daybook in Italian; and that he entered them in the journal in English. He also testified that the deceased spoke a Swiss dialect; that he would not think deceased had very much schooling; and

that the generally accepted meaning of "fra" in the Eureka community is "among."

As to the translation of "nepotti," Dr. Chappelle testified that it means nephews, nieces, grandchildren, descendants. De Martini testified that it means nephews and may include nieces, and that the dictionary says it includes grandchildren.

■■ It is a cardinal rule governing the interpretation of wills that the intention of the testator controls, and that in ascertaining such intention recourse may be had, in a doubtful case, to the surrounding circumstances. In re Hartung's Estate, 40 Nev. 262, 160 P. 782, 161 P. 715; 69 C. J., p. 63.

■ We are not justified in saying that the lower court erred in holding that it was not the intention of the testator to bequeath his estate to two units, as contended by the appellant. In fact, the testimony of Dr. Chappelle, the witness called in behalf of the appellant, does not call for a conclusion contrary to that reached by the court. He testified that "fra" is sometimes "used to translate the idea where we say among." This testimony, standing alone, would have justified the court in holding as it did as to the two units theory urged by appellant. De Martini strengthens the conclusion. Mr. Biale, who had known the deceased for many years and who had been employed by him in his store, testified that the deceased spoke a Swiss dialect, and that he thought testator did not have very much schooling. He also testified that the generally accepted meaning of "fra" in the Eureka community was "among." We do not see how the lower court could have reached any other conclusion than it did on the point above mentioned.

In view of the fact that the evidence warranted the trial court in assuming that the testator might have used the word "fra" to mean among, we feel that we need not determine if the circumstances justified the court in giving "fra" that construction.

■ No serious point is made here as to the interpretation of "nepotti," for it is admitted that following this

word there are Italian words stating there are five in California and two in Switzerland—referring to five children of testator's sister Rose and the two children of his sister Marie. There can be no contention on this point, in view of the facts.

Counsel for appellant seeks to make a point of the fact that one of the children of testator's deceased sister Rose was living in Oregon at the time the will was drawn. It sems to us there can be no merit in this contention. It is conceded that the one who lived in Oregon at the time was a son of Rose. In fact, he is the administrator, with the will annexed, of testator. It is evident testator did not know when he wrote the will that this nephew had moved to Oregon.

██ Counsel contends that the gift to the nephews and nieces was a class gift. He says it was a class gift because the number of nephews and nieces might fluctuate, and in fact did fluctuate as the result of the death of his nephew Walter Paroni. We think counsel is in error. 1 Jarman on Wills (7th ed., Sanger), at p. 310, defines a class gift as being "a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time. * * *" Such is the well-recognized rule. In re Murphy's Estate, 157 Cal. 63, 106 P. 230, 137 Am. St. Rep. 110; 28 R. C. L., p. 260, and authorities cited to note 8.

In the instant matter the will did not contemplate a gift to an uncertain number—to a number which might fluctuate—but to a definite number—eight in all; hence it clearly appears that it was not a class gift.

The other point made being bottomed upon the "class gift" contention, which we have rejected, needs no consideration.

█ Counsel for appellant asked, in his oral argument, that this court make an order allowing him a fee for prosecuting this appeal. He cited no authority justifying such an order, and we know of none. The application is denied.

No error appearing, the orders appealed from are affirmed.